UNITED STATES DISTRICT COURT　　　　SOUTHERN DISTRICT OF TEXAS

| | | |
|---|---|---|
| Integrity Collision Center, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| *versus* | § | Civil Action H-14-2310 |
| | § | |
| City of Fulshear, | § | |
| | § | |
| Defendant. | § | |

## Opinion on Summary Judgment

1.   *Background.*

The city of Fulshear lies 35 miles west of Houston. Its police are occasionally obliged to tow a car without the owner's consent. Before April of 2012, the police had called a tow truck from a list maintained by the Fort Bend County Sheriff. When Fulshear needed a car towed, it rotated its selection, calling in turn every company on the list.

In April of 2012, Kenny Seymour as the chief of police decided to switch to only two companies from the list – A&M Wrecker Service and Riverside Auto Collision Center.

Integrity Collision Center and Buentello Wrecker Service were on the sheriff's list and had been used by Fulshear before it changed policies. In late April, Integrity and Buentello asked what was required to be included in the new rotation. Twenty months later after several additional inquiries, Fulshear sent them a list of requirements that included:

- Proximity: vehicle storage within ten miles and a 30-minute response.
- Background checks on drivers.
- Heavy-duty wrecker with roll-back capability.
- Secure, indoor storage.
- Insurance coverage of $1 million.
- Hazardous-materials capability.

The companies responded that they met each requirement, except that their storage lot was more than ten miles outside the city limits. They noted, however, that one of the two companies that Fulshear had chosen also had a lot outside the ten-mile limit. After Buentello again asked to be included, Seymour simply told them on March 26, 2014, that the city would not include them in the rotation.

Integrity and Buentello sued the City of Fulshear, saying that its police's refusal to include them or allow them competitively to bid on the work was an unequal application of law – an arbitrary exercise of governmental power.[1]

2.      *Equal Protection.*

Integrity and Buentello say that the City treated them differently than similarly situated companies. The City insists that the two companies are not entitled to the benefits of governmental regularity under the Constitution. It says that (a) its towing is discretionary and (b) it is a consumer, not a regulator. It adds that even if the companies enjoyed the protection of equality at law, its selection was not irrational.

A.      *Discretion.*

The City says that the Texas Transportation Code authorizes law officer's discretion to tow cars.[2] Choosing a wrecker inheres in the duty to tow.[3]

Discretion is the freedom to decide what is to be done. More accurately, discretion is duty to apply sound judgment – not indulge a whim – to a question of action. The root of discretion is *discrete* – separate reasons rather than unitary, opaque pronouncements. Governmental criteria need to be directly, rationally related to the actual thing to be done – cogent, neutral, prospective, known, stable, and consistently applied.

Assuming that the Texas legislature had expressly said in the statute that the officer may select a wrecker based on common membership in a fraternal order or support for a professional sports team, the national Constitution does not abide caprice or cunning in governmental acts.

---

[1] U.S. Const. amend. XIV, § 1.

[2] Tex. Transp. Code Ann. § 545.305 (West).

[3] Fort Bend County Wrecker Ass'n v. Wright, 39 S.W.3d 421, 425 (Tex. App.—Houston [1st Dist.] 2001, no pet.).

American rejection of arbitrary government requires articulable rationality – facts, standards, cogency.[4] Even for competitive bidding, the requirements must directly bear on competence. The companies chosen must be demonstrably superior according to articulable criteria.

Fulshear did not solicit prices. It did not articulate criteria. Seymour simply picked companies that he liked or companies that he did not dislike. Because the chosen companies were not required to apply, let alone give the police data about their operation, Seymour had no rational basis for deciding.

B.    *Regulation.*

The City says that its provision of towing is consumption, not regulation. It cites cases that it says limit equal protection to when government acts as a regulator, not a consumer.[5] While no federal law preempts the Texas Transportation Code, the Constitution informs its implementation.[6] Besides, Fulshear has no ordinance for the nation to preempt. The City is not a consumer, the car owner would be made to pay the eventual charges plus, in all likelihood, an administrative fee. This makes the car's owner the consumer with Fulshear being the regulator.

The City also says that violations of equal protection brought by a "class of one" are available only for regulation.[7] Well, first we have a class of two. Second, to have a constitutional claim, one person needs to have been the object of a partial law or a law's partial enforcement. The law requires that a claim include only that (a) the plaintiff has been intentionally treated differently from others similarly situated and (b) no rational basis for the difference exists.[8]

---

[4] Yick Wo v. Hopkins, 118 U.S. 356, 371 (1886).

[5] Cardinal Towing & Auto Repair, Inc., v. City of Bedford, Tex., 180 F.3d 686 (5th Cir. 1999).

[6] U.S. Const. art. 6, cl. 2.

[7] Engquist v. Or. Dep't of Agric., 553 U.S. 591, 594 (2008).

[8] Village of Willowbrook v. Olech, 528 U.S. 562 (2000).

C.     *Reason.*

Equal protection of law ensures that people subjected to law are treated alike, under like circumstances and conditions, both in the privileges conferred and in the liabilities imposed.[9] Though numerically a class of two, Buentello and Integrity's claims are analogous to claims by a "class of one." They were treated differently than other similarly situated tow companies – the two that were selected.

The City says that although they were treated differently, it had a rational basis for their exclusion. It analogizes the choice to a homeowner calling a plumber with whom he is familiar instead of soliciting bids and exhaustively searching. A private person may retain plumbers on their skill at soccer. Fulshear is not a private person. It is obliged to meet its responsibilities with regularity – the Constitution's 14th Amendment.

This sort of expedience is dishonest. Seymour would not have been exhausted by interviewing new wreckers and checking their paperwork. Sloth is not rationally related to the City's duty to call responsible, efficient wreckers to clear its streets. It would be more work to require comparative price lists and evaluate the companies' insurance and other papers, but not enough to exhaust anyone. Seymour's 20 months of evasion before the plaintiff's patience was exhausted evinces a lack of regularity. An answer delayed is an opportunity denied.

The City's claim that Seymour applied rigorous, articulable criteria when selecting the two companies is empty. He had no standards until these companies badgered him. After he created a partial list of requirements, he applied them inconstantly. The City has no evidence that Seymour collected information from the companies he chose. He included a company that did not meet his "requirement" of having a lot within ten miles of the city limits.

His criteria also evolved. Seymour later added an amorphous element: his appraisal of their appearance and reputation. It was illusory because Fulshear offered no paper or recollection that suggested that Seymour polled other cities about their experience with a range of wrecker services. He had no information about the reputation and business practices of these companies.

These show an absence of regularity; he had no real requirements for inclusion. The caprice of the police chief was all that counted. That is the depth of arbitrary government.

The City also says that Seymour's limiting of the number of companies was rational to limit the trouble of picking one. Seymour did consider using a third company. The number of

---

[9] Haynes v. Missouri, 120 U.S. 68, 71–72 (1887).

tows that are needed has increased dramatically since Seymour chose his two. Currently, every time the City needs a wrecker, Seymour flips a card to see who is next. Adding a third company would not defeat this system. Even if the number of tows had not grown or does not grow, increasing the pool of qualified wreckers requires a new, more sophisticated mechanism, like three cards on a ring – or 25 cards.

3.      *Remedy.*

The City of Fulshear must include Integrity and Buentello in its towing rotation. It must also articulate and publish reasonable criteria for inclusion of others. These criteria may not mask personal or local preferences, exclusion of disfavored potential applicants, or artificially preserve the *status quo*, but they must clearly and logically describe the actual characteristics of a responsible wrecker.

Companies that wish to be included must submit price lists with documents verifying its compliance with the rational specifics; it must be the same for all applicants. A company that meets these reasonable requirements, supported by facts, must be included in the City's rotation. It may have lists for heavy towing, for environmental incidents, and routine towing. The City may adopt additional criteria and omit some that it now has.

Fulshear went from being a small farm town to being an incipient suburb of Houston. Its population has grown from 560 in 1990 to 4,500 in 2015 an eight-fold increase. The administrative burden on Fulshear of being open, thoughtful, and precise is modest in a small town with little through traffic. It may increase as the city grows, but the city has accepted all of the responsibilities of governing constitutionally. At times the burdens of growth may seem to outweigh the benefit, but its duty is constant.

As a practical matter, an open, rational market for wreckers would supply the City with better service and lower costs, but the Constitution does not require efficient management of its responsibility, just that it not be arbitrary.

4.      *Conclusion.*

> The great ideals of liberty and equality are preserved against the
> assaults of opportunism, the expedience of the passing hour, the
> erosion of small encroachments, the scorn and derision of those
> who have no patience with general principles, by enshrining
> them in constitutions.[10]

Governmental regularity is the essence of equal protection; the City cannot arbitrarily decide and then justify its actions with false and empty inventions. The goal is an equality in treatment of people that preserves the public power for the public in open and articulated processes.

Signed on August 28, 2015, at Houston, Texas.

Lynn N. Hughes
United States District Judge

---

[10] Benjamin N. Cardozo, *The Nature of the Judicial Process,* 92 (1921).